In re Dwight L. LIEB, Debtor.

Dwight L. LIEB, Plaintiff,

v.

Paul J. TILLMAN; Paul J. Tillman, Trustee; Frederick L. "Rick" Thomson III; Citysavings & Loan Association; Tilcorp, Inc.; and Walzem Service Corporation, Defendants.

Bankruptcy No. 89–51344–C.
Adv. No. 89–5334–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Feb. 1, 1990.

832

S. Mark Murray, San Antonio, Tex., Mr. Shelby A. Jordan, Corpus Christi, Tex., for debtor.

Claiborne B. Gregory, Jr., San Antonio, Tex., for Citysavings & Loan Ass'n and Walzem Service Corp.

Jack Paul Leon, San Antonio, Tex., Randall Wilson, Houston, Tex., for Paul J. Tillman, Individually, Paul J. Tillman, trustee.

Donald R. Taylor, Janice L. Jenning, San Antonio, Tex., for Frederick L. Thomson.

R. Glen Ayers, Jr., San Antonio, Tex., for Tilcorp, Inc.

## ORDER DENYING MOTION FOR DISQUALIFICATION

LEIF M. CLARK, Bankruptcy Judge.

This matter comes before the court on Defendants' motion seeking to disqualify the court in this adversary proceeding pursuant to 28 U.S.C. § 455(a) or in the alternative under 28 U.S.C. § 455(b)(1). Defendants' motion is denied for the reasons set forth herein.

## INTRODUCTION

The court is currently conducting a preliminary injunction hearing in this adversary proceeding. On numerous days over the course of the past several months the court has heard evidence on the matter. On January 17, 1990, Mr. Paul Tillman, one of the Defendants, was testifying. While listening to Mr. Tillman's testimony the court became concerned about a possible problem and called all counsel into chambers for a conference.

What transpired and what was said in chambers is disputed. It is not disputed, however, that during the in-chambers conference the court raised the issue of recusal under the "personal knowledge of disputed evidentiary facts" provision of 28 U.S.C. § 455(b)(1) *sua sponte*. Nor is it disputed that the following day the court, ruling from the bench, decided not to recuse itself *sua sponte*. The court has also entered a written order to that effect. Subsequently, Defendants filed a motion requesting the court to recuse itself.

## DISCUSSION

■ The court has before it Defendants' Motion for Disqualification ("Defendants'

Motion" or "Motion")[1] and their Brief in Support of Defendants' Motion to Disqualify ("Defendants' Brief" or "Brief").[2] Defendants submit in paragraph 12 of their Motion that disqualification is appropriate "[b]ased upon the foregoing factual recitation" and "the statements made in chambers and in open court."[3] Accordingly, this court will address each of Defendant's "factual recitations" and each of the alleged "statements made in chambers and in open court."[4] In addition, legal arguments contained in Defendants' Brief will be addressed.

## FAILURE TO RECORD IN CHAMBERS MEETING

■ Defendants note in paragraph 4 of their Motion that "[n]o court reporter was present" at the January 17, 1990 in-chambers conference between counsel for all parties and the court. Proceedings held in chambers need not be recorded. Only those proceedings conducted in open court must be recorded unless the parties agree otherwise. *In re Beard,* 811 F.2d 818, 833 (4th Cir.1987); *United States v. Hein,* 769 F.2d 609, 610–611 (9th Cir.1985); *United States v. Murphy,* 768 F.2d 1518, 1536 (7th

1. Bankruptcy Rule 5004 provides that a bankruptcy judge shall be governed by 28 U.S.C. § 455. Defendants were correct in bringing this motion under 28 U.S.C. § 455 and not pursuant to 28 U.S.C. § 144. "28 U.S.C. § 144 applies, by its express terms, to district court proceedings only." *In re B & W Management, Inc.,* 86 B.R. 1, 2 n. 5 (D.D.C.1988). Nevertheless, case law construing section 144 is applicable to a determination under section 455 because "[s]ubstantively, the modern sections 144 ... and 455 ... are 'quite similar, if not identical.'" *United States v. York,* 888 F.2d 1050, 1053 (5th Cir.1989) (quoting *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983)); *see Davis v. Board of School Comm'rs,* 517 F.2d 1044, 1052 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) ("Construing §§ 144 and 455 *in pari materia* we believe that the test is the same under both.... This means that we give §§ 144 and 455 the same meaning legally for these purposes, whether for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned.").

2. The court also has before it Plaintiff's Response to Defendants' Motion for Disqualification ("Plaintiff's Response" or "Response."

3. Defendants also submit in paragraph 12 of their Motion that disqualification is appropriate based upon "the additional testimony to be given in support of this motion before the Honorable Edward Prado." Judge Prado, in an Order signed January 26, 1990, ruled that he will consider this court's disqualification only as a matter on appeal. *See* discussion *infra* p. 11.

4. It is appropriate to discuss each of Defendants' assertions in detail. *See Bradley v. Milliken,* 620 F.2d 1143, 1157 (6th Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). This court does so in order to further the policy behind section 455 "to promote public confidence in the impartiality of the judicial process." H.R.Rep. No. 1453, 93d Cong., 2d Sess. 4–5, *reprinted in* 1974 U.S.Code Cong. & Admin. News 6351, 6354–55. This Order is intended to explain why there is no reasonable factual basis for this court to disqualify itself in the current proceeding.

Cir.1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986); *United States v. Jenkins,* 442 F.2d 429, 438 (5th Cir.1971).

## "OFFER" OF RECUSAL

■ Defendants appear to be arguing in paragraphs 4 and 6 of their Motion and on pages 2 and 8 of their Brief that the court made an "offer" to counsel to recuse itself and that Defense counsel "accepted" the offer.[5] Defendant's version of the facts is disputed by Plaintiffs in paragraph 4 and 5 of their Response.[6] Even accepting Defendants' version as true, however, it provides no grounds for recusal.[7]

■ The decision whether a judge should recuse himself is not a matter of contract law. "Offer" and "acceptance" principles do not apply. Even if the court did have the intent to recuse itself under 28 U.S.C. § 455(b)(1) at the time of the in-chambers conference, the court was free to change its mind prior to making a final ruling on the matter the following morning. The court is also free to vacate an order of recusal. In *United States v. Dalfonso,* 707 F.2d 757 (3d Cir.1983), the trial judge, following an off-the-record conversation with counsel, announced that he was recusing himself from the case. After further off-the-record discussions with counsel and after further reflection, however, the judge changed his mind and decided not to recuse himself. *Id.* at 759. He vacated the recusal order. *Id.* at 759. The Third Circuit Court of Appeals affirmed the trial judge's refusal to recuse himself. *Id.* at 763. *See Hall v. SBA,* 695 F.2d 175, 180 (5th Cir.1983) ("Every judge has suffered a change of heart after reaching a tentative decision.")

## IMPROPER LITIGATION TACTICS

■ Defendants state three times in their Motion (see paragraphs 6, 8 and 11) and once in their Brief (see page 3) that the court accused defense counsel of improper litigation tactics.[8] As a matter of law this is insufficient grounds for recusal. *Panzardi–Alvariz v. United States,* 879 F.2d 975, 984 (1st Cir.1989) ("[a] court's disagreement—even one strongly stated—with *counsel* over the propriety of trial tactics does not reflect an attitude of personal bias against the *client* ") (quoting *In re Cooper,* 821 F.2d 833, 841 (1st Cir.1987)) (emphasis in original); *see Davis v. Board of School Comm'rs,* 517 F.2d 1044, 1050–1052 (5th Cir.1975), *cert. denied,* 425 U.S.

---

**5.** Defendants' Motion states the following in paragraph 4: "Judge Clark went on to state that if the parties could agree to waive this problem then he would continue, but if they could not, he would be out of the case in a 'New York nano-second.' To defense counsel, this appeared to be a clear statement of the Court's intent to recuse itself unless the parties agreed to waive the recusal." Paragraph 6 of Defendants' Motion states that Defense counsel "accepted the Court's offer of recusal" and that "[d]uring the discussion the attorneys for the Defendants took the position that the Court had recused himself in the earlier meeting unless the parties could agree to waive and that the parties were unable to agree to waive." Defendants state on page 8 of their Brief the following: "In addition to his statements in chambers, Judge Clark's subsequent conduct demonstrates the appearance of partiality. As is fully set forth in defendants' motion, Judge Clark, having announced his intention to recuse himself if the parties so desired, refused to do so the next day."

**6.** Plaintiffs state in paragraph 5 of their Response that Defense counsel, "in an apparent misunderstanding or misinterpretation of what

had been stated by the Court, attempted to 'accept', an offer which had never been proffered by the Court, for its recusal."

**7.** This should not be interpreted as meaning that *the court accepts Defendants' version.* It should be noted, however, that 28 U.S.C. § 455(e) prohibits a waiver of 28 U.S.C. § 455(b)(1). It was section 455(b)(1) which the court was considering during the in-chambers conference.

**8.** Plaintiffs, however, on pages 6–7 of their Response disagree: "Judge Clark has never asserted affirmatively that he felt that the counsel for the Defendants were asserting or bringing the Motion for Recusal for purposes of gaining a tactical advantage. In fact, after presentation by Mr. Claiborne Gregory, counsel for CitySavings & Loan Association that it was *not* such an attempt, he accepted the same as being true." The court need not and does not make a present determination as to improper litigation tactics of Defendants. It should be noted, however, that a recusal at this stage would work towards Defendants' favor and against Plaintiffs. The cost for the Plaintiffs to "start over" may be prohibitive.

944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) (controversy between lawyer and judge over the propriety of the lawyer's use of a class action device did not suggest bias against the client).

## "CLASHES" BETWEEN COUNSEL AND THE COURT

■■■ Defendants make reference in open court to several "clashes" between the court and defense counsel.[9] As a matter of law this is insufficient as the basis for a disqualification motion. Circuit Courts have refused to base disqualification under section 455 upon apparent animosity towards counsel.[10] *See Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1052 (5th Cir.1975) (disqualification should be determined "on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel"); *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1398–1399 (8th Cir. 1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984) ("Antipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a 'party.' "); *United States v. Sibla*, 624 F.2d 864, 869 (9th Cir.1980). An appearance of partiality against a party cannot simply be presumed from a rancorous relationship with the attorneys for that party. *In re National Union Fire Ins.*, 839 F.2d 1226, 1232 (7th Cir.1988) ("Visible annoyance [with counsel] is no reason for recusal...."). As the First Circuit stated last year: "As a general rule, bias against the party must be shown and it is insufficient to rely on 'clashes between court and counsel' as the basis of a disqualification motion." *Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989) (quoting *In re Cooper*, 821 F.2d 833, 838 (1st Cir.1987)).

## REQUEST TO MAKE RECORD

■■■ Defendants' Motion correctly states in paragraph 11 that the court declined three times Defendants' request to make a record concerning what occurred in chambers. The court stands by its ruling. A motion for disqualification does not confer upon Defendants a right to make a record in open court nor does it confer upon them a right to an evidentiary hearing. Defendants have provided nothing to suggest a need for an open court proceeding. Their position can be adequately presented through pleadings and affidavits. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3550,

9. Defendants state in paragraph 8 of their Motion that "[t]he Court admonished defense counsel for the contents of their brief and indicated it was considering striking the brief and imposing sanctions." Such action by a judge is entirely appropriate. *See In re Cooper*, 821 F.2d 833, 843 (1st Cir.1987) ("A judge who believes misconduct has occurred has a responsibility to act.")

Defendants also state in paragraph 8 of their Motion that when defense counsel asked for a *continuance* the court granted a ten minute *recess*. The January 18, 1990 transcript, however, clearly states that defense counsel requested a "short recess" and not a continuance. *See* 1/18/90 Official Transcript, at 25.

Defendants state in paragraph 8 of their Motion the following: "After the recess, Mr. Wilson moved for recusal under 28 U.S.C. § 455(a). The court stated that it interpreted the motion as calling the court a liar...." As Plaintiff correctly notes in paragraph 8 of his Response, the transcript of the hearing bears out that Defendants' statement is incorrect. In response to defense counsel's request for a continuance in order to prepare and file a motion under 28 U.S.C. § 455(a), the court responded that "I'm going to go ahead and let you prepare that motion ... but I'm not going to grant a continuance." 1/18/90 Official Transcript at 26. Plaintiff notes in paragraph 8 of his Response that "[i]t was only when the Court reminded counsel for the Defendants and all others present that he had no specific recollection about who was present or not present at that meeting; that he had stated such at the chambers conference on the 18th; and after counsel for the Defendants then requested to make a record in an apparent attempt to contradict the recollection of the Court, that Judge Clark stated he interpreted such an attempt to dispute his recollection as being the closest anyone had come to calling him a 'liar.' " It should be noted, however, that Defendants' Brief on page 3 does not make the same error as their Motion.

10. This should not be interpreted as meaning that the court feels any animosity towards defense counsel. As the court has previously stated, it understands that counsel is simply zealously representing their clients. This court holds all of defense counsel in high esteem.

at 629 (section 455 motion can be supported by an affidavit, a verified memorandum, or a statement of facts in some other form). Defendants have in fact submitted a nine-page Motion for Disqualification and a twelve-page Brief in Support of Defendants' Motion to Disqualify. In addition, Defendants previously filed a five-page Motion and Brief concerning recusal of the court when the court was considering recusal *sua sponte.*

■■■■ A reading of case law shows that Motions for Disqualification are typically decided on the documents submitted to the court. *See, e.g., Easley v. University of Mich. Board of Regents,* 853 F.2d 1351 (6th Cir.1988). The recent Fifth Circuit case of *Levitt v. University of Tex.,* 847 F.2d 221 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 536, 102 L.Ed.2d 567 (1988) provides the best guidance on this issue and the procedure to follow.[11] The Court in *Levitt* held that the trial judge can decide *based upon the "claim asserted"* the threshold question of whether the circumstances would raise a doubt in the mind of a reasonable observer as to the judge's impartiality. *Id.* at 226. The Court added that if the trial judge decides the "claim asserted" is within section 455, "then a disinterested judge must decide what the facts are." *Id.* at 226. In *Levitt* the Court found that none of the circumstances asserted rose "to the threshold standard of raising a doubt in the mind of a reasonable observer" as to the trial judge's impartiality. *Id.* at 226. Accordingly, "[t]here was no duty on the [trial] judge's part to recuse himself." *Id.* at 226.

Accordingly, based upon *Levitt,* the proper procedure is as follows:

(1) This court should decide whether the "claim asserted" by the Defendants "rises to the threshold standard of raising a doubt in the mind of a reasonable observer" as to this court's impartiality.

(2) If so, another judge should "decide what the facts are," i.e. hold an evidentiary hearing.[12]

(3) If not, this court should not recuse itself.

*See id.* at 226. Based upon *Levitt,* therefore, it would be improper for this court to hold an evidentiary hearing. This court must simply determine whether the "claim asserted" by Defendants rises to the threshold standard. Because this court has determined that Defendants' claim does not rise to the threshold standard (see discussion *infra,* pp. 843–844) an evidentiary hearing by another judge should not be held at this time. If Defendants appeal this decision and the District Court finds the record and documents submitted to be inadequate for a determination, it can remand and direct another judge to conduct an evidentiary hearing to enlarge the record. Such procedure is consistent with *Levitt. See Easley v. University of Mich. Board of Regents,* 853 F.2d 1351, 1358 (6th Cir.1988) (remanded for evidentiary hearing to enlarge record).

### PROPER COURT TO HEAR 455(a) MOTION

■■ Defendants state in paragraph 11 of their Motion the following: "The Court then determined that another judge could and should hear the dispute. The Court called the Honorable Edward Prado and all counsel were instructed to report to his Courtroom."

The official transcript for January 19, 1990 reads as follows with regard to this court's statements:

There is a lot of merit to what you're saying. Let me suggest this gentlemen, let me suggest this: you've got my ruling on this but what I've ruled on was my own sua sponte motion for recusal as it were under 455(b)(1) and Mr. Taylor now brings forward that Mr. Wilson's motion is basically under 455(a). Mr. Jordan does have a point and it *may be* that the best court to decide this issue is

---

11. "Section 455 is wholly silent about procedure, except for its waiver provisions." 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3550, at 625.

12. Presumably then this judge would decide whether disqualification is appropriate.

a court other than me. I frankly don't have a problem with that.

. . . .

I think Mr. Jordan is correct that *perhaps* the right court to try this is some other court but the point is, I've got to try to get you in front of another court.

1/19/90 Official Transcript at 16–17 (emphasis added).

Counsel for both sides met with Judge Prado the morning of January 19, 1990. Judge Prado has appropriately decided that this court should decide Defendants' Motion for Disqualification and that he would hear the matter only on appeal. *See* January 26, 1990 Order of Judge Prado.

The law is well settled that it is entirely proper for the challenged judge to pass on the disqualification matter himself. *Levitt v. University of Tex.*, 847 F.2d 221, 226 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 536, 102 L.Ed.2d 567 (1988); *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 963 n. 9 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980); *U.S. v. Haldeman,* 559 F.2d 31, 131, 181 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 240 (1977). Chief Judge Battisti of the Northern District of Ohio provides an excellent discussion on this issue.

Without an understanding of the checks and balances that operate to insure a just determination of a recusal motion, one might question the efficacy of a procedure whereby the judge who is the subject of such a motion is left to rule on its sufficiency. Most courts have not been squarely faced with a challenge to the procedure. However, at least one court has seen fit to comment extensively on the reasons behind it. The court in *United States v. Zagari,* 419 F.Supp. 494, 498–499 (N.D.Cal.1976), expressing its support for the current manner of disposing of recusal motions, remarked as follows:

Some of the reasons that have been given for the rule allowing the judge being questioned to pass on the legality of the motion are that otherwise the disqualification procedure could be used as a tool for delay and disruption of the administration of the courts, and that such judge knows better than anyone else whether he could give the parties a fair and impartial trial.

Although courts have been known to seek the reassignment of a matter to another judge for purposes of resolving recusal motions, *see United States v. Zagari,* 419 F.Supp. at 497, such action is by no means typical or required to insure a just ruling on such motions. *See United States v. Olander,* 584 F.2d 876, 833 (10th Cir.1978), *vacated on other grounds,* 443 U.S. 914, 99 S.Ct. 3105, 61 L.Ed.2d 878 (1979).

Confident that it can and will reach a just determination without endangering the Court's appearance of impartiality, this Court will follow the practice recognized by most of the federal courts that have been faced with recusal motions. That parties may seek appellate review of this Court's ruling on the question of recusal doubly insures a just determination of the issue raised in Respondent's Motion. *See, e.g., City of Cleveland v. Krupansky,* 619 F.2d 576 (6th Cir.1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980); *Rosen v. Sugarman,* 357 F.2d 794 (2d Cir.1966); *United States v. Zagari,* 419 F.Supp. 494.

*In re Demjanjuk,* 584 F.Supp. 1321, 1322 n. 1 (N.D.Ohio 1984), *aff'd sub nom. Demjanjik v. Petrovsky,* 776 F.2d 571 (6th Cir. 1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986).

IN–CHAMBERS STATEMENTS

Defendants attribute to the court several statements made in-chambers, which if in fact made, Defendants insist prove that the court's impartiality may reasonably be questioned per section 455. To appreciate the significance of this contention, some background is necessary. One fact issue in the current hearing [13] concerns whether outcome of the case.

13. The court does not believe that this fact issue of itself is particularly important to the ultimate

Paul Tillman (one of the Defendants) recommended certain counsel to the Plaintiff. Plaintiff says that Mr. Tillman recommended such counsel to him. Mr. Tillman denies ever making such a recommendation, adding that Plaintiff became acquainted with such counsel on his own, based upon Plaintiff's exposure to such counsel during prior negotiations (unrelated to this proceeding) between CitySavings and one Charles Schreiner Nelson ("Nelson"). Such counsel represented Nelson while Plaintiff was a principal of CitySavings. Mr. Tillman recalls that he and Plaintiff were both present at these negotiations which supports Mr. Tillman's contention that Plaintiff met such counsel on his own. Prior to his appointment to the bench, the judge was present at such a negotiations meeting as an attorney. At issue is whether the court has extrajudicial knowledge of Plaintiff's presence at the negotiations. If the court independently recalls that Plaintiff was not present then its recollection differs from Mr. Tillman's testimony and Mr. Tillman's credibility could be affected. This was the basis for the court first raising the concern *sua sponte* whether it should recuse itself pursuant to 28 U.S.C. § 455(b)(1) as having "personal knowledge of disputed evidentiary facts." Upon careful consideration the court concluded that it should not recuse itself pursuant to 28 U.S.C. § 455(b)(1) because it did not in fact have "personal knowledge of disputed evidentiary facts." [14]

Defendants insist that statements made in chambers (their version of which is set out in their pleadings) compel recusal under 28 U.S.C. § 455(a) because they prove that the court's impartiality might reasonably be questioned. Here is a synopsis of their statement of facts concerning the court's in-chambers remarks, as set out in their Motion:

(i) Judge Clark announced that he had an "evidentiary fact" problem. Motion ¶ 4.

(ii) Judge Clark stated that the evidentiary fact problem was as to who had recommended the employment of Robert Pate and that he might have knowledge bearing on the issue, as a result of being present at that meeting. Motion ¶ 4.

(iii) Judge Clark stated that he recalled some of those present at the meeting. He had a definite recollection that Mr. Tillman and Marshall Miller were present and that Dwight Lieb was not. Motion ¶ 4.

(iv) During this discussion, the Court made a statement that the Court had a problem with the credibility of Paul Tillman. Motion ¶ 6.

(v) After the above discussion, Judge Clark stated that he did not have a certain recollection of all persons who attended the Nelson meeting. Motion ¶ 7.

Plaintiff, in his Response to Defendants' Motion, sets out *his* version of these facts:

(i) The Plaintiff in this case feels compelled to file this Response to the Motion for Recusal in order to, among other things, correct what counsel for the Plaintiffs perceives to be several problems regarding the recitation of facts contained with the Motion of the Defendants. Response ¶ 1.

(ii) [T]ruth in publication requirements would mandate that the "factual" recitations of Defendants' Motion be classified as fiction. Response ¶ 1.

(iii) Moreover, and contrary to the assertion made by Defendants, Plaintiff strongly resists the proposition asserted by Defendants in their Motion that "Judge Clark announced that he had an 'evidentiary fact' problem." Response ¶ 3.

(iv) In addition, Plaintiff strongly and vehemently disagrees with the proposition contained in the Motion of the Defendants that "He (Judge Clark) had a definite recollection

---

**14.** The court's ruling on this issue is set out in the Official Transcript, and is also the subject of a separate order.

that Mr. Tillman and Marshall Miller were present and that Dwight Lieb was not." Response ¶ 3.

(v) Judge Clark clearly stated that while he did remember some of those who were present at the meeting, he was unclear about *all* of whom were present at the meeting. He stated he remembered there were others present at the meeting whom he could not identify, but never affirmatively stated that he remembered that Dwight Lieb was not there. Response ¶ 3 (emphasis in original).

(vi) [T]he Court never stated that he "had a problem with the credibility of Paul Tillman." Response ¶ 7.

(vii) The fact as recited in the Motion for the Defendants that "during this discussion, the Court made a statement that the Court had a problem with the credibility of Paul Tillman," *is absolutely, totally* and *unequivocally untrue.* The Court never made such a statement. Response ¶ 7 (emphasis in original).

The court's "version" of the facts is set out partly *infra* in note 16.

▮▮▮ As discussed above, the law is well settled that, in acting upon a motion for disqualification filed under section 455, the court may rule upon the facts as set out in affidavits, verified memoranda or a statement of facts in some other form, such as a pleading.[15] *See, e.g., Easley v. University of Mich. Board of Regents,* 853 F.2d 1351 (6th Cir.1988). *See also* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3550, at 629 (1984). Wright, Miller & Cooper adds that "the court is not required to accept the

factual statements as true." *Id. See, e.g., Phillips v. Joint Legislative Comm. on Performance and Expenditure Review,* 637 F.2d 1014, 1019–1020 n. 6 (5th Cir. Unit A 1981), *cert. denied sub nom. Mississippi v. Phillips,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982) ("section 455 ... does not require the judge to accept all allegations by a moving party as true.... If a party could bind a judge by his factual allegations in a section 455 motion ... the result would be a virtual open season for recusal"); *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1525 n. 16 (11th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989) (citing *Phillips* ); *United States v. Sciarra,* 851 F.2d 621, 625 n. 12 (3d Cir.1988) ("there is considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455 may be scrutinized by the court deciding the motion for recusal"); *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987) ("under this section [455], factual allegations do not have to be taken as true"); *In re Beard,* 811 F.2d 818, 827 (4th Cir.1987) ("if an affidavit or motion is filed under § 455 seeking disqualification, the judge is not bound to accept those allegations as true"); *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986) (agreeing with the Fifth Circuit that a party cannot force the judge to accept the party's factual allegations as true, otherwise the result "would be a virtual 'open season' for recusal").

It is also well settled that a judge is not limited to those facts presented by the party seeking disqualification under section 455. *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987) ("nor is the judge limited to those facts presented by the challenging

---

15. The recitations set out in the parties' pleadings may be reasonably relied on as a statement of facts for purposes of this ruling, due in part to the provisions of Rule 9011, which provides that "[e]very ... pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney ... constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's

or party's knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact ... and that it is not interposed for any improper purpose.... Bankr.R. 9011(a). Given that the recitations of fact in this case represent the recollections of the attorneys themselves, the very provisions of Rule 9011 mandate that the attorneys' respective representations on the witness stand could not depart appreciably from their recitations in their pleadings.

party"); *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984) ("judge is to take into consideration all circumstances both public and private"); *Idaho v. Freeman,* 507 F.Supp. 706, 721, 723 (D.Idaho 1981) (judge considers all circumstances both public and in hidden view). As the Seventh Circuit has stated, "the judge is free to make credibility determinations, assign to the evidence what he believes to be its proper weight, and to contradict the evidence with facts drawn from his own personal knowledge." *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir.1985).

 The Defendants have submitted here one version of what they believe the court to have stated in chambers. The Plaintiffs have submitted another. The

court has voiced its own version previously on the record.[16] The court itself is called upon to evaluate these respective statements, to make credibility determinations, to assign to the various statements (treated here as evidence for purposes of considering this motion) what the court believes to be the proper weight, and to contradict that evidence with facts drawn from his personal knowledge, including his own personal evaluation of his impartiality and whether a reasonable person evaluating the judge might question that impartiality. *United States v. Balistrieri,* 779 F.2d at 1202.

 "The standard for determining whether a judge should disqualify himself under § 455 is whether a reasonable person knowing *all the facts* would conclude that the judge's impartiality might reasonably be questioned." *Hepperle v. Johnston,*

---

16. The court's recollection of what it said in chambers was set forth partly on the January 18, 1990 record:

"In listening to the testimony of Mr. Tillman yesterday I asked the parties to meet with me in chambers—the attorneys to meet with me in chambers to advise them that when Mr. Tillman made reference to a conference that he had had in an attempt to resolve a dispute involving Charles Schreiner Nelson, that reminded me that I *may have been* present at that particular meeting. In fact, *I was present at a meeting and I don't know if it is 'the' meeting* to which Mr. Tillman is making reference, but I know that I was present at a meeting at which—at least Mr. Tillman and Mr. Pate were present. There were other persons present in the courtroom as well—in the meeting room as well." (1/18/90 Official Transcript at 9) (emphasis added).

"What I did not recall last night and what I advised the parties in chambers of last night, shortly before we concluded, was that *my recollection was not clear. I did not know for sure who was and who was not present at that meeting.* I said at the time I did not recall that Mr. Lieb was there. Now as it turns out—I thought about this, believe me, I've thought about this a lot because it's—it's a very important and critical issue. I don't know who was there but I also can't say with a certainty that Mr. Lieb wasn't there and that leads me because I—I do have a recollection that there was at least one other person there, whom I didn't know and whom I had not seen since. It could have been Mr. Lieb because I don't know. If Mr. Lieb takes the stand and says he wasn't there, my recollection could just as easily impeach Mr. Lieb's credibility as it would impeach Mr. Tillman's. *The simple fact is, I don't know.*" (1/18/90 Official Transcript at 9–10).
 ....

"What about my ability to evaluate the impartial—or the credibility of these witnesses.... [A]m I going to suffer under a bias or prejudice as a result of being present at that meeting? The simple answer is, no." (1/18/90 Official Transcript at 17).

"... I am not prepared to comment on the credibility of Mr. Tillman at this time, either [sic] than to say that many of the things that he said are credible...." (1/18/90 Official Transcript at 17).
 ....

"... All I tell you is that, so far as I'm concerned, nothing I have heard to date, certainly nothing that I have heard to date, relative to what I may have experienced as a private lawyer has infected my ability, in my own view, to evaluate Mr. Tillman's credibility.... (1/18/90 Official Transcript at 19).

The court made further comments on the record January 19, 1990:

"Now we can get—where we get here is at bottom line we get to this, I don't remember. The parties insist that what I said in chambers yesterday or the day before is that this is what my memory was. Therefore, Judge, what you're saying now is not consistent with what you said then. But the whole thing is a decision-making process.... (1/19/90 Official Transcript at 13).
 ....

"That is this, I at no time in my recollection ever stated that I would have a problem with—that I never stated that I have a problem with Mr. Tillman's credibility.... (1/19/90 Official Transcript at 19–20).

590 F.2d 609, 614 (5th Cir.1979) (emphasis added). "[D]isqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition v. Liljeberg,* 796 F.2d 796 (5th Cir.1986), *aff'd,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (quoting *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980)). The legislative history of the 1974 amendments to section 455 explains:

> Subsection (a) of the amended section 455 contains the general, or catch-all, provision that a judge shall disqualify himself in any proceeding in which "his impartiality might reasonably be questioned." This sets up an objective standard, rather than the subjective standard set forth in the existing statute....

H.R.Rep. No. 1453, 93d Cong., 2d Sess. 4–5, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6454–55. The "facts" which a reasonable person here has available to determine whether the judge's impartiality might reasonably be questioned consist of (1) Defendants' recollections (set out in their moving papers), (2) Plaintiff's recollections (set out in *their* moving papers) and (3) the court's recollection (including those set out on the record).[17] An objectively placed reasonable person, on reviewing these facts, would not question the court's impartiality. To the average person in the street, there would be no impression of partiality. *See Watson v. Fort Worth Bank & Trust,* 856 F.2d 716, 720

(5th Cir.1988). This court thus finds and concludes that nothing was said in chambers that would lead a reasonable person to question the impartiality of this court with respect to either the parties in this case or the underlying merits of this preliminary injunction action. 28 U.S.C. § 455; *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *Hepperle v. Johnston,* 590 F.2d 609, 614 (5th Cir.1979).

Even were the court to accept at face value Defendants' account of the court's in-chambers comments, the court would nonetheless reach the same result, namely, that after considering "all the facts," including subsequent comments by the court, a reasonable man objectively situated would harbor no doubts about the court's impartiality. In a nutshell, Defendants' recollection is that the court stated that (i) it had an "evidentiary fact" problem; (ii) it might have knowledge bearing on the issue of who recommended counsel to Plaintiff; (iii) it had a definite recollection that Plaintiff was not at the meeting in question; and (iv) it had a problem with the credibility of Paul Tillman.[18] Defendants cling to their recollections, as if they are somehow more truthful than the court's subsequent statements, for which we have a record. A "reasonable man," however, would evaluate those fervently held recollections in light of the comments made by the court on the record in this case. A "reasonable man" would also consider that these in-

---

**17.** The court notes that the certainty of the Defendants' recollections are in part undermined by the acknowledgement of Mr. Ayers in a colloquy with the court that a similar averment in Defendants' first brief on this issue was "a mischaracterization."

> THE COURT: ... What is not disclosed in this particular representation of the apparent facts, for example, is the fact that when the Court made it's recitation regarding ability to resolve the dispute and determined credibility of witnesses the comments of the Court was "could affect", not would....
>
> MR. AYERS: Your Honor, I will accept that. I think that is, if you will, a mischaracterization on my part. I think that it is accurate to say that the Court stated "it could." That I apologize for the use of the word would....

1/18/90 Official Transcript at pp. 7–8.

The remarks refer to what the court believed at the time to *have been* the relatively innocuous rumination that, of course, personal knowledge of an extrajudicial fact *could affect* credibility determination. *Absent* the predicate knowledge, credibility determination would *not* be affected. The court has determined that it does indeed *lack* that personal knowledge. Credibility determinations are thus unimpaired.

**18.** The court reiterates that it finds the Defendants' recollections to suffer from hyperbole and a tendency to substitute the indicative for the subjunctive mood when reporting statements made in chambers.

chamber "statements" are the sort of ruminations about which a court could have a change of mind. *Hall v. SBA*, 695 F.2d 175, 180 (5th Cir.1983) ("Every judge has suffered a change of heart after reaching a tentative decision."); *see United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) (section 144 claim insufficient in part because trial judge's statements on the record that he had not made up his mind on the merits manifested an open mind on the merits of the case). A decision on the merits in the present case has not yet been made by the court and the court does not know how it will rule. *See* 1/18/90 Official Transcript at 16–17. A reasonable person would thus not conclude that this court's impartiality could be questioned in this case, even on Defendants' recollections of what statements were made in chambers.[19]

## DEFENDANTS' LEGAL ARGUMENTS

In the interest of clarity, several issues presented in Defendants' Brief need to be addressed.

### 1. *Rule of Necessity*

 Defendants argue in their Brief that the Rule of Necessity, discussed by the court while ruling from the bench on January 18, 1990, does not apply to the present case. The court's ruling from the bench was not in fact controlled by the Rule of Necessity. *See* 1/18/90 Official Transcript at 20. Nor is the Rule of Necessity at all dispositive in this Order. The

court refers to the rule (as it did in its earlier bench ruling) merely to note that the Fifth Circuit appears to have slightly expanded it to take into consideration hardship factors that would result from recusal. Some such factors appear to be present in this case.[20]

The Rule of Necessity provides that "although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise." *United States v. Will*, 449 U.S. 200, 213, 101 S.Ct. 471, 480, 66 L.Ed.2d 392 (1980) (quoting F. Pollack, *A First Book of Jurisprudence* 270 (6th ed. 1929)). Stated differently, "where all are disqualified, none are disqualified." *Pilla v. American Bar Ass'n*, 542 F.2d 56, 59 (8th Cir.1976) (citing *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920)). 28 U.S.C. § 455 "was not intended by Congress to alter the time-honored Rule of Necessity." *Will*, 449 U.S. at 218, 101 S.Ct. at 482.

The Fifth Circuit, in commenting on the rule, stated that "[t]he rule is somewhat analogous to an easement by necessity, which requires that one be completely landlocked before the doctrine will apply." *In re City of Houston*, 745 F.2d 925, 930 n. 9 (5th Cir.1984). The court continued, however, that "the analogy is imperfect insofar as the Rule of Necessity may not require that the federal courts be utterly 'landlocked.'" *Id.* The court then cited to *In re*

---

**19.** To the extent that Defendants also seek disqualification for "personal bias or prejudice" under 28 U.S.C. § 455(b)(1), such motion is also denied. A "reasonable person" objective test is also the standard to be applied under section 455(b)(1). *Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1075 (5th Cir. Unit B 1982); *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir.1985); *see United States v. Story*, 716 F.2d 1088, 1091 (6th Cir.1983); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1167 (1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *see also United States v. Miranne*, 688 F.2d 980, 985 (5th Cir.1982), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 736, 74 L.Ed.2d 959 (1983) ("reasonable man" test under 28 U.S.C. § 144). In addition, it is well settled that "bias" under section 455(b)(1) must "result in an opinion on the merits." *United States v. Reeves*, 782 F.2d 1323, 1325 (5th Cir.

1986), *cert. denied*, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986); *Phillips v. Joint Legislative Comm. on Performance and Expenditure Review*, 637 F.2d 1014, 1020 (5th Cir. Unit A 1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982).

**20.** In its bench ruling, the court noted that recusal in this case would undoubtedly visit a hardship on the Plaintiff, who might well be compelled to retry the entire preliminary injunction hearing, which has to date consumed well over 20 hours of actual court time, at a rather considerable expense that the Plaintiff might well be unable to afford. The effective result could well be that, after having spent so much to get this far, the Plaintiff would be precluded from injunctive relief not by the merits of the action but by a technicality beyond their control.

*New Mexico Natural Gas Antitrust Litig.,* 620 F.2d 794, 797 (10th Cir.1982), in which the Tenth Circuit remarked on the impracticality and unnecessary hardship of recusal where the grounds are tenuous at best. The Fifth Circuit notes in *City of Houston* that if it did not already have far stronger grounds for denying the writ of mandamus, it might have recourse to the Rule of Necessity. *City of Houston,* 745 F.2d at 930 n. 9; *see Strey v. Hunt Int'l Résources Corp.,* 516 F.Supp. 22, 24–25 (D.Colo.1981) (based upon the holding in *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.1980) that the relevant inquiry requires consideration of "all the circumstances," court considered substantial delay and prejudice that would result from recusal).

While the Rule of Necessity certainly does not control this decision, a review of "all the circumstances" here demonstrates that the court's decision on the recusal action here presented is *supported* by the Rule. Recusal could well result in the retrial of the entire preliminary injunction hearing at severe and perhaps even insurmountable additional expense. The economics of the case being what they are, the Plaintiff might well be unable to afford to mount the attack all over, before another judge. The effect of recusal could thus be to deprive the Plaintiff, as a practical matter, of a decision on the merits of his request for injunctive relief. The substantial prejudice this would visit on the Plaintiff is a factor a court would be entitled to consider in deciding the recusal issue, even were it not dispositive. *See Potashnick,* 609 F.2d at 1111.

### 2. *Liljeberg*

Defendants cite to *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), *aff'g* 796 F.2d 796 (5th Cir.1986). The court agrees with the proposition for which Defendants cite this case in their brief. However, *Liljeberg* is clearly inapposite to the matter at hand. The judge in that case was a trustee of a university which had a clear financial interest in the outcome of the trial proceeding before the judge and his service

as a trustee continued throughout the trial. In contrast, this court has no financial interest whatsoever in the pending litigation. Also, a reasonable person would necessarily question the assertion made by the judge in *Liljeberg* that he "forgot" a matter of some importance to the board on which he served, a matter which was discussed at a meeting in his presence shortly before the trial and again shortly after the trial. The facts of this case, by contrast, involving a judge who cannot recollect whether a person was not present at a meeting which took place some three years ago, one of hundreds of meetings he would have attended as an active practitioner, are hardly the sort that would lead a reasonable person to question the impartiality of that judge.

### 3. *Lawyers as witnesses*

The court need not address the issue raised in footnote one of Defendants' Brief in light of its ruling herein that any further evidentiary hearing is unnecessary in this case and will not be conducted. The court notes with some interest, however, Defendants' statement that "[t]he testimony the lawyers will give does not relate to essential facts at issue in the case."

### CONCLUSION

"There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *In re Union Leader Corp.,* 292 F.2d 381, 391 (1st Cir.), *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); *e.g., Easley v. University of Mich. Board of Regents,* 853 F.2d 1351, 1356 (6th Cir.1988); *In re Forty-Eight Insulations, Inc.,* 84 B.R. 129, 133 (Bankr.N.D.Ill.1988) ("judges have an obligation to litigants and their colleagues not to remove themselves needlessly"); *Smith v. Revie (In re Moody),* 58 B.R. 308, 309 (Bankr.S.D.Tex.1986) ("a judge has as much obligation not to recuse when there is no reason to do so as to recuse when the converse is true"). "A timid judge, like a biased judge, is intrinsically a lawless judge." *Wilkerson v. McCarthy,* 336 U.S.

53, 65, 69 S.Ct. 413, 419, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring). Recusal in this proceeding is not appropriate. Defendants' Motion for Disqualification is denied.[21]

So ORDERED.

---

**21.** To the extent that Defendants have any oral motions pending under 28 U.S.C. § 455, such motions are also denied based upon the reasons stated herein.

Moments before signing this Order the court received a Corrected Declaration of Frederick L. "Rick" Thomson In Support of Motion for Disqualification and Defendant Frederick Thomson's Brief in Support of Affidavit for Recusal Pursuant to 28 U.S.C. § 144. The court finds Mr. Thomson's Declaration and Brief to be untimely as it was not submitted with the Motion.

The court notes, however, that the matters raised in Mr. Thomson's Declaration have been thoroughly addressed in this order. The court also notes that it rejects as unfounded the conclusions in Mr. Thomson's Brief.